**Trung D. Tu, OSB No. 004100**
Deputy City Attorney
**PORTLAND CITY ATTORNEY'S OFFICE**
1221 SW Fourth Avenue, Room 430
Portland, Oregon 97204
Telephone: (503) 823-4047
Facsimile: (503) 823-3089
Email: trung.tu@portlandoregon.gov

      Of Attorneys for Defendants City of Portland,
      Anthony Whitmore, Garret Hemmerlein,
      Tyler Brunelle and Craig Dobson

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **DEXTER PEARCE**,<br><br>          Plaintiff,<br><br>v.<br><br>**CITY OF PORTLAND**; **ANTHONY WHITMORE**; **GARRET HEMMERLEIN**; **TYLER BRUNELLE**; **MICHAEL RAINS**; and **CRAIG DOBSON**,<br><br>          Defendants. | Case No. **3:22-cv-00518-HZ**<br><br>**DEFENDANTS CITY OF PORTLAND, ANTHONY WHITMORE, GARRET HEMMERLEIN, TYLER BRUNELLE AND CRAIG DOBSON'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>(Oral Argument Requested) |

## CERTIFICATE OF CONFERRAL

    Counsel for Defendants City of Portland ("City"), Anthony Whitmore ("Whitmore"),

Garret Hemmerlein ("Hemmerlein"), Tyler Brunelle ("Brunelle") and Craig Dobson ("Dobson")

(collectively, "City Defendants")[1] hereby certifies that pursuant to LR-7-1(a)(A), he conferred with

Juan C. Chavez and Franz Bruggemeier, who are two of the three attorneys of record in this case

for Plaintiff Dexter J. Pearce ("Plaintiff" or "Pearce"), by email on September 16, 2022, and then

---

[1]    In his Second Amended Complaint, Plaintiff also names <u>former</u> Portland Police Officer Michael Rains ("Rains") as a defendant, in place of one of the John Doe Defendants.  However, because Rains is no longer employed by the City, he is not represented by the Portland City Attorney's Office in this matter and is <u>not</u> included within the term, "City Defendants".

Page 1 &ndash; **CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

by video conference on September 19, 2022, in a good faith effort to resolve this dispute and the issues raised herein.  Unfortunately, the parties were not able to do so.

<u>**REQUEST FOR ORAL ARGUMENT**</u>

Pursuant to Federal Rule of Civil Procedure 12(i) and LR 7-1(d)(2), the City Defendants request oral argument on this Motion by video appearance or other remote means.  The time estimated for oral argument on this Motion is forty-five (45) minutes.

<u>**MOTION TO DISMISS**</u>

The City Defendants hereby move the Court, pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6), as well as 12(h)(3), for an order dismissing Plaintiff's entire Second Amended Complaint ("SAC") (ECF No. 20) with prejudice for the following reasons ("Motion"):

1.      All five of the claims asserted in the SAC fail to state a claim upon which relief can be granted because: (a) Plaintiff's accusation, in support of his § 1983 claims and his battery claim, that he was shot by a police officer from the Portland Police Bureau ("PPB") and/or by the named Officer Defendants is pure speculation since he affirmatively alleges and judicially admits that he did not see, did not interact with and does not know who had actually shot him; and (b) Plaintiff's assertion that all four of the named Officer Defendants had fired the single shot that hit him is not plausible, *see* Fed. R. Civ. P. 12(b)(6);

2.      Claim 1 and Claim 2, for purported violations of Plaintiff's Fourth Amendment right to be free from unlawful seizures, fail to state a claim upon which relief can be granted because Plaintiff affirmatively alleges that the officer or officers who shot him did not attempt to arrest him, take him into custody nor otherwise seize him, *see* Fed. R. Civ. P. 12(b)(6); and

3.      The Court lacks subject-matter jurisdiction over Claim 5, which is a state law battery claim, because Plaintiff failed to timely serve the City with his required tort claim notice, *see* Fed. R. Civ. P. 12(b)(1) and 12(h)(3).

The City Defendants ask that the Court dismiss all of Plaintiff's claims with prejudice and without leave to amend, because allowing him to amend for a <u>fourth time</u> would be futile since:

Page  2  –  CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

(1) he never saw the person who had actually shot him with the 40 mm impact munition and he cannot determine who had shot him; (2) there is no basis for his Fourth Amendment claims since the force that was used against him did not occur in the course of an arrest, investigatory stop or other seizure; and (3) his battery claim is time barred.

This Motion is based upon and supported by: (1) the Memorandum of Law below; (2) the supporting Declaration of Trung D. Tu and exhibits thereto ("Tu Dec."); (3) the Court's complete records and file for this case; (4) such matters that the Court may take judicial notice of; and (5) such oral and documentary evidence as may be presented during the hearing on this Motion.

## <u>MEMORANDUM OF LAW</u>

### I.    INTRODUCTION

Plaintiff filed this lawsuit in order to hold the City and each of the named Portland Police Bureau ("PPB") personnel individually and financially liable for an injury that Plaintiff admits he has no actual knowledge nor evidence was actually caused by any of the named police officers or any other officer from PPB.  That is Plaintiff's foundation and basis for this lawsuit.

Plaintiff, who alleges that he was protesting on the streets of downtown Portland on the night of July 4, 2020, brings this lawsuit against the City Defendants, initially asserting in <u>both</u> his Complaint and [First] Amended Complaint ("FAC") that it was Defendant <u>John Doe 1</u>, a single <u>unknown</u> and <u>unseen</u> PPB police officer, had supposedly shot him once "in the back of his right calf with a 40 mm impact munition" (ECF Nos. 1 and 11, pg. 1 and ¶ 4).  By his own allegations, Plaintiff has judicially admitted <u>three times</u> that he did not see, did not have contact with and does not know who had shot him (ECF Nos. 1 and 11, ¶¶ 5 and 43-44; ECF No. 16, ¶¶ 46-47).  Despite not knowing who had shot him, in response to the City's Motion to Dismiss as to Plaintiff's First Amended Complaint ("First MTD") (ECF No. 13) and to avoid dismissal, Plaintiff <u>randomly</u> named <u>four</u> current and former PPB police officers from <u>three different</u> Mobile Field Force ("MMF") teams, <u>in place of the lone John Doe 1</u> who had fired the <u>single shot</u> that hit Plaintiff's calf – apparently, Plaintiff is now asserting that all four of the named officers must have fired the

Page  3  –  CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

single shot that hit him. For that reason, Plaintiff now brazenly claims that all of the City Defendants are <u>each</u> individually and financially liable to him for that single shot.

Plaintiff's claims against the City Defendants are untenable, especially since video footage of the protest on July 4, 2020, which was declared to be a riot, shows that Plaintiff could have been just as likely shot with an impact munition by one of the many Multnomah County Sheriff's Deputies who were also pushing back protestors that night, or he was likely shot by one of the numerous protestors who were indiscriminately shooting off fireworks at people in all directions. The Court should therefore dismiss all of Plaintiff's claims for relief with prejudice and provide the City Defendants with a money award for all of their attorneys' fees and costs incurred in defending against Plaintiff's objectively unreasonable lawsuit.

## II.    PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

### A.    <u>Procedural History of this Case</u>

On April 5, 2022, Plaintiff filed his original Complaint in this case, which had named the City and John Does 1-10 as the only defendants (ECF No. 1, pg. 1 and ¶¶ 5-6). In response to the parties' conferral about the City's planned motion for a more definite statement, pursuant to Federal Rule of Civil Procedure 12(e), on May 27, 2022, Plaintiff filed his unopposed first Motion to Amend Complaint ("First MTA") (ECF No. 8). The Court granted Plaintiff's First MTA on June 7, 2022 (ECF No. 10), and Plaintiff filed his FAC that same day (ECF No. 11). In his FAC, Plaintiff once again named only the City and John Does 1-10 as the defendants (ECF No. 11, pg. 1 and ¶¶ 5-6). The City responded to Plaintiff's FAC by filing its First MTD on June 21, 2022 (ECF No. 13). In the First MTD, the City argued that Plaintiff's Claims 2, 4 and 5 should be dismissed for failure to state a claim because Plaintiff's assertion that he was shot by a PPB officer was pure speculation since he had affirmatively alleged and judicially admitted in the FAC that he did not see and does not know who had actually shot him (ECF No. 13, pg. 2).

Instead of responding to the First MTD, on July 2, 2022, Plaintiff filed his second Motion to Amend Complaint ("Second MTA") (ECF No. 15). Since the City did not oppose his Second

Page  4  –  CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

MTA, the City withdrew its First MTD on July 6, 2022 (ECF No. 17). The Court granted Plaintiff's Second MTA on July 13, 2022 (ECF No. 19), and he filed his SAC that same day (ECF No. 20). In his SAC, Plaintiff substituted and arbitrarily named four current and former PPB police officers, Whitmore, Hemmerlein, Brunelle and Rains (collectively, "Officer Defendants"), in place of John Doe 1, who Plaintiff had previously alleged was the lone unknown and unseen officer who shot him (ECF No. 20, pgs. 1-2 and ¶¶ 5-8; ECF No. 11, pg. 1 and ¶ 5). Plaintiff also substituted and named Dobson in place of John Does 2-10 (ECF No. 20, pg. 1 and ¶ 9; ECF No. 11, pg. 1 and ¶ 6). The four Officer Defendants and Dobson together are referred to herein as the "Police Defendants".

**B.    The SAC's Factual Allegations**

The purported facts alleged in the SAC and the reasonable inferences that can be drawn from them are as follows: (1) "[o]n the late evening of July 4, 2020, Plaintiff was" protesting in downtown Portland with "a group of protestors who had come out in support of Black lives" (ECF No. 20, ¶¶ 44-45); (2) the police had issued "orders to disperse[,]" which means that a riot had been declared (ECF No. 20, ¶ 46); (3) sometime between 11:45 pm on July 4, 2020 and 12:10 am on July 5, 2020, Plaintiff "was complying with police orders to disperse" by "actively walking away" with "his back facing the officers" (ECF No. 20, ¶ 46); (4) when, "without warning," he was shot once "in the back of his [right] calf with an impact munition" (ECF No. 20, ¶ 46); (5) "Plaintiff was not facing the officer [who shot him] at the time he was shot" (ECF No. 20, ¶ 47); (6) his "friend identified the munition on the" ground as "a 40 mm munition" (ECF No. 20, ¶ 47); (7) the "shot took [Plaintiff] by surprise" (ECF No. 20, ¶ 47); (8) somehow, all four of the Officer Defendants must have fired the single shot that hit Plaintiff since they "were all present and firing their 40 mm launchers at the crowd" (ECF No. 20, ¶¶ 46-47); (9) but Plaintiff never actually saw nor spoke with the officer who had shot him since that officer "did not attempt to arrest him nor take him into custody" (ECF No. 20, ¶ 47); (10) none of the people in Plaintiff's group had seen nor spoken with the officer who had shot him since no one "in his group had been targeted for arrest following [that] shot" (ECF No. 20, ¶ 47); (11) despite not seeing and not knowing who had

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, ROOM 430
PORTLAND, OREGON 97204
TEL: (503) 823-4047; FAX: (503) 823-3089

actually shot him, Plaintiff asserts that, "[b]y information and belief, the [four] named-MFF officer Defendants shot [him] in retaliation for protesting [the] police that evening" (ECF No. 20, ¶ 48); and (12) Dobson was the incident commander that night, who had purportedly made "the decision to fire on all protesters – including Plaintiff" (ECF No. 20, ¶ 50).

**C.    Plaintiff's Claims for Relief**

Plaintiff asserts five claims for relief against the City Defendants.  His first and third claims are brought pursuant to 42 U.S.C. § 1983, and are asserted as individual claims against the Police Defendants only, and not against the City (ECF No. 20, ¶¶ 53-59 and 65-68).  For his Claim 1 (ECF No. 20, ¶¶ 53-59), Plaintiff alleges that by "shooting an unarmed, passively resistant at most person with a 40 mm impact munition," the Officer Defendants "intentionally violated Plaintiff's right to be free from unlawful seizures guaranteed by the Fourth Amendment to the United States Constitution" (ECF No. 20, ¶ 54).  He further alleges that, "Dobson participated in Plaintiff's injury by failing to supervise and discipline" the Officer Defendants "and/or by directing [them] to fire upon Plaintiff" (ECF No. 20, ¶ 58).  As for Claim 3 (ECF No. 20, ¶¶ 65-68), Plaintiff asserts that the Police Defendants "targeted" him "because they took offense to [his] speech activity[,]" and "[b]y shooting at and injuring Plaintiff, [the Police] Defendants chilled [his] political speech, violating his First Amendment rights" (ECF No. 20, ¶¶ 65 and 67).

Plaintiff's second, fourth and fifth claims are asserted as municipal claims against the City only (ECF No. 20, ¶¶ 60-64 and 69-79).  For Claims 2 and 4, Plaintiff alleges that the City is liable to him pursuant to 42 U.S.C. § 1983 and *Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658 (1978) ("*Monell*"), because the Police Defendants' alleged conduct "is illustrative of a pattern and practice of PPB officers violating" the First and Fourth Amendment rights of individuals who protest against "white supremacist groups and/or police misconduct" (ECF No. 20, ¶¶ 61 and 67).  With regard to Claim 5, Plaintiff asserts a state tort claim of battery and alleges that the City is liable to him because its "agents . . . unlawfully intend[ed] to come into physical contact" and "did come into contact with" him (ECF No. 20, ¶ 78).

Page  6  –  CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

### III.    APPLICABLE LEGAL STANDARDS

### A.    <u>Standard for Motions to Dismiss for Failure to State a Claim</u>

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), tests whether a "cognizable legal theory" has been alleged or if "sufficient facts [have been] alleged to support a cognizable legal theory." *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015) (quotations and citations omitted). The Court must dismiss if it appears beyond doubt that the plaintiff cannot prove any set of facts that would entitle the plaintiff to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In deciding the motion, the Court is required to assume that all of the factual allegations contained in the plaintiff's complaint are true and construe those factual allegations in the light most favorable to the plaintiff. *See Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). It is within the Court's discretion to dismiss claims with prejudice if it is apparent that any further amendments would be futile. *See Reddy v. Litton Ind., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990).

### B.    <u>Standard for Motions to Dismiss for Lack of Subject-Matter Jurisdiction</u>

With regard to a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and 12(h)(3), the Court "may weigh the evidence to determine whether it has jurisdiction." *Autery v. U.S.*, 424 F.3d 944, 956 (9th Cir. 2005). In doing so, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Augustine v. U.S.*, 704 F.2d 1074, 1077 (9th Cir. 1983). However, "if the jurisdictional issue and substantive claims are so intertwined that resolution of the jurisdictional question is dependent on factual issues going to the merits, the district court should employ the standard applicable to a motion for summary judgment and grant the motion to dismiss . . . only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Rosales v. U.S.*, 824 F.2d 799, 803 (9th Cir. 1987).

Page  7  –  CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

IV.    **DISCUSSION**

A.    **Plaintiff Has Affirmatively Pleaded Himself Out of Court**

The Court should dismiss all of Plaintiff's five claims for failure to state a claim upon which relief can be granted, *see* Fed. R. Civ. P. 12(b)(6), because he judicially admits that he did not see and does not know who had actually shot him with a 40 mm impact munition, and his accusation that all four of the Officer Defendants fired the single shot that hit him is pure speculation and not plausible. Pursuant to Federal Rule of Civil Procedure 8(a)(2), for a pleading to state a claim for relief, it must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." As such, a plaintiff must allege, with some particularity, the facts that would support the plaintiff's claims. *See Jones v. Community Redevelopment Agency of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984). The "[f]actual allegations must be enough to raise a right to relief <u>above the speculative level</u>[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (emphasis added). However, even when a plaintiff has alleged sufficient facts to state a claim, the "plaintiff <u>may plead himself out of court</u> by alleging facts which show that he has no claim[.]" *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001) (emphasis added), *quoting from Soo Line R.R. v. St. Louis Southwestern Ry., Co.*, 125 F.3d 481, 483 (7th Cir. 1997).

For this Motion, it is not necessary to analyze whether Plaintiff has alleged the necessary facts to satisfy every element required for each of his claims. That is because this Motion is not based on Plaintiff's failure to allege sufficient facts. Instead, it is based on Plaintiff having pleaded himself out of court by affirmatively alleging and judicially admitting facts which show that he actually has no cognizable claim against the City Defendants. *See Weisbuch v. County of Los Angeles*, 119 F.3d 778, 783 fn.1 (9th Cir. 1997) (stating that a plaintiff may plead herself out of court if the pleading establishes facts showing that she cannot prevail). That is because all of Plaintiff's claims are premised and dependent on his conclusory allegation that he was shot by all of the Officer Defendants (ECF No. 20, ¶ 46), but yet, by his own repeated judicial admissions, he has absolutely no basis to support that allegation. *See Blantz v. California Dept. of Corrections*

Page 8 – CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

*and Rehabilitation*, 727 F.3d 917, 927 (2013) (stating that conclusory allegations without factual support are insufficient to defeat a motion to dismiss).

Even though Plaintiff alleges, without any factual support, that <u>all four</u> of "the named-MFF officer Defendants shot [him] in the back of his calf with an impact munition" and that <u>all four</u> of "the named-MFF officer Defendants shot [him] in retaliation for protesting [the] police" (ECF No. 20, ¶¶ 46 and 48), he also alleges and admits the following facts which reveal that he has no basis to assert that whoever had shot him was either one of the Officer Defendants or all four of them, let alone that it was actually a police officer with PPB who had shot him:

(a)    "<u>A</u> [single] Portland Police Officer shot [Plaintiff] in the back of his right calf with a 40 mm impact munition[,]" but "[Plaintiff] was <u>not facing the officer</u> at the time he was shot" (ECF No. 20, pg. 1) (emphasis added);

(b)    Plaintiff "heard no warning from the officer" who shot him (ECF No. 20, pgs. 1-2);

(c)    "The officer [who shot Plaintiff] did not arrest [him] and did not take him into custody after the shot" (ECF No. 20, pg. 2);

(d)    When Plaintiff was shot, he "was complying with police orders to disperse[,] . . . had his back facing the [police] officers and was actively walking away" (ECF No. 20, ¶ 46);

(e)    Plaintiff was shot "without warning . . . in the back of his calf with an impact munition" (ECF No. 20, ¶ 46);

(f)    "Plaintiff was not facing the officer at the time he was shot" (ECF No. 20, ¶ 47);

(g)    The "shot took [Plaintiff] by surprise" (ECF No. 20, ¶ 47);

(h)    "The individually-named" Officer Defendants "did not attempt to arrest [Plaintiff] nor take him into custody" (ECF No. 20, ¶ 47); and

(i)    No one "in [Plaintiff's] group [had] been targeted for arrest" after he was shot (ECF No. 20, ¶ 47).

Those allegations show that this is <u>not</u> a situation in which Plaintiff saw the officer who shot him and knows for certain that it was an officer from PPB based on the officer's PPB uniform or PPB labeled gear, but he cannot identify nor name that officer because the officer's name or other identifying information were covered up or were not visible. Instead, all of the above quoted

Page 9 – CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

allegations taken together demonstrate that Plaintiff and those in his group did not see the person who had shot him, they did not have any sort of contact with the person who had shot him, and they have no knowledge about who had actually shot him.  As such, Plaintiff has no objectively reasonable basis to assert that he was shot by a police officer from PPB, let alone that he was shot by all four of the Officer Defendants.  *See Jones, supra*, at 649 (stating that conclusory allegations, unsupported by facts, will be rejected as insufficient to state a claim).  That is because Plaintiff's unsupported allegations that he was shot by the Officer Defendants are contradicted by his own admissions quoted above.  *See Hakopian v. Mukasey*, 551 F.3d 843, 846 (9th Cir. 2008) (stating that allegations in a complaint are considered as judicial admissions).  As such, Plaintiff's assertion that he was shot by the Officer Defendants is pure speculation and cannot support any of his claims. *See Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 972 (9th Cir. 2019) (stating that to survive dismissal, a claim must rise above the speculative level and allow the court to make the reasonable inference that defendant is liable for the misconduct alleged).

The City's argument that all of Plaintiff's claims are speculative is buttressed by the fact that in both his original Complaint and his FAC, Plaintiff repeatedly alleged that he was shot and injured by "John Doe 1" (ECF Nos. 1 and 11, pg. 1, ¶ 5, 43-45, 47 and 50) and admitted that "[he] does not know the names [sic] of Defendants [sic] John Doe 1" (ECF Nos. 1 and 11, ¶ 5).  Plaintiff only named Whitmore, Hemmerlein, Brunelle and Rains in place of John Doe 1 in response to the City's First MTD (ECF No. 13) and to avoid dismissal.  That is evident from the fact that Plaintiff has repeatedly alleged that it was "A" single "Portland Police Officer" who had shot him (ECF Nos. 1, 11 and 20, pg. 1), but yet, he substituted four different officers for the one single PPB officer who had supposedly shot him, without any allegations to explain why those four Officer Defendants were named in place of a single John Doe 1.  Plaintiff also does not allege anywhere in the SAC that any of those Officer Defendants had individually shot at Plaintiff or in his direction. Instead, Plaintiff only speculates that each of them "participated in Plaintiff's injury" (ECF No. 20, ¶¶ 5-8) because they "were all present [at an unspecified location] and firing their 40 mm launchers

Page  10  –  **CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

at the crowd" (ECF No. 20, ¶ 47). *See Twombly, supra*, 550 U.S. at 555 (stating that factual allegations must be enough to raise a right to relief above the speculative level).

Moreover, Plaintiff repeatedly alleges that he was only shot once with "a" single "40 mm impact munition" (ECF No. 20, pg. 1, ¶¶ 47 and 54) or "an" impact munition (ECF No. 20, ¶ 46). But yet, Plaintiff asserts that all four of the Officer Defendants had shot him with that one impact munition (ECF No. 20, ¶¶ 46). However, it is objectively and scientifically impossible for all four of the Officer Defendants to have fired the single shot that allegedly hit the back of Plaintiff's right calf. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that to survive a motion to dismiss, a complaint must contain sufficient facts to state a claim "that is plausible on its face" and "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

Because of Plaintiff's admissions that he and those in his group did not see, did not have contact with and do not know who had actually shot him, Plaintiff's assertion that he was shot by the Officer Defendants is pure speculation and cannot support of any his claims against the City Defendants. Moreover, it is not plausible that all four of the Officer Defendants had fired the single shot that hit Plaintiff. For those reasons, the Court should dismiss all of the SAC's claims.

**B.     The Fourth Amendment Claims Should be Dismissed Since Plaintiff Alleges that He was Never Arrested, Taken Into Custody nor Otherwise Seized**

The Court should dismiss the two Fourth Amendment excessive force claims that are asserted in the SAC's Claim 1 (ECF No. 20, ¶¶ 53-59) and Claim 2 (ECF No. 20, ¶¶ 60-64) for failure to state a claim upon which relief can be granted, *see* Fed. R. Civ. P. 12(b)(6), because Plaintiff affirmatively alleges that he was neither arrested nor taken into custody, and he never alleges that he was otherwise "seized" by the Officer Defendants. *See County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) (stating that the Fourth Amendment covers only searches and seizures). As the Supreme Court has instructed, when "addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989).

Page 11 –   **CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Plaintiff identified the Fourth Amendment as the basis for both of his Claim 1 and Claim 2 by asserting that the: (1) Officer Defendants' conduct "violated [his] right to be free from unlawful seizures guaranteed by the Fourth Amendment to the United States Constitution" (ECF No. 20, ¶ 54); and (2) Police Defendants' conduct "is illustrative of a pattern and practice of PPB officers violating the Fourth Amendment rights [of] individuals at protest demonstrations countering white supremacist groups and/or police misconduct" (ECF No. 20, ¶ 61).

Contrary to Plaintiff's assertions, the Fourth Amendment is not applicable to either of his two excessive force claims. That is because the Supreme Court has held "that *all* claims that law enforcement officers have used excessive force – deadly or not – in the course of an <u>arrest, investigatory stop, or other 'seizure'</u> of a free citizen should be analyzed under the Fourth Amendment[,]" *Graham*, 490 U.S. at 395 (italics in original, underlining added), and that "[t]he Fourth Amendment covers <u>only</u> searches and seizures," *Lewis, supra*, 523 U.S. at 843 (underlining added; quotations omitted). However, in his SAC, Plaintiff alleges that, "[t]he officer [who had shot him] did not attempt to arrest [him] and did not take him into custody after the shot" (ECF No. 20, pg. 2), and that the Officer Defendants "did not attempt to arrest him nor take him into custody" after they shot him (ECF No. 20, ¶ 47). As for whether Plaintiff was ever otherwise "seized," the Supreme Court has explained that "[a] person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, <u>terminates or restrains his freedom of movement</u> through means intentionally applied[.]" *Brendlin v. California*, 551 U.S. 249, 254 (2007) (quotations, citations and italics omitted; underlining added). The SAC contains no indication that Plaintiff's freedom of movement was ever terminated or restrained by the Officer Defendants.

Because the SAC's allegations demonstrate that the alleged force that was purportedly used against Plaintiff did not occur "in the course of an arrest, investigatory stop, or other seizure[,]" pursuant to both *Graham* and *Lewis*, the SAC fails to state a cognizable Fourth Amendment claim against the City Defendants. The Court should therefore dismiss Claim 1 and Claim 2.

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, ROOM 430
PORTLAND, OREGON 97204
TEL: (503) 823-4047; FAX: (503) 823-3089

C.    **Plaintiff's State Law Battery Claim is Untimely and Barred by the OTCA**

The Court should dismiss Claim 5 for lack of subject matter jurisdiction, *see* Fed. R. Civ.

P. 12(b)(1) and 12(h)(3), because Plaintiff failed to timely serve the City with his tort claim notice.

The SAC's Claim 5 is a state law tort claim for battery (ECF No. 20, ¶¶ 77-79).  Plaintiff's battery

claim is therefore controlled by the Oregon Torts Claim Act, codified at ORS 30.260 to 30.300

(collectively, "OTCA").  Plaintiff bears the burden to both plead and prove that he has provided

adequate and timely notice to the City.  *See Urban Renewal Agency of City of Coos Bay v. Lackey*,

275 Or. 35, 40 (1976) (stating that the pleading and proof of sufficient notice is a mandatory

requirement and a condition precedent to recovery under the OTCA).  Failure to provide the City

with timely notice of a tort claim, pursuant to the OTCA, divests the Court of subject matter

jurisdiction over the claim.  *See Curzi v. Oregon State Lottery*, 286 Or. App. 254, 265 (2017)

(concluding that the trial court did not err for dismissing the plaintiff's claims for lack of subject

matter jurisdiction because he had failed to provide the state with timely notice of his tort claim).

Pursuant to ORS 30.275(2)(b), Plaintiff was required to serve the City with his tort claim

notice "within 180 days after the alleged loss or injury."  Plaintiff alleges that he was shot with the

40 mm impact munition on either the late night of July 4, 2020, or the early morning of July 5,

2020 (ECF No. 20, ¶ 46).  Giving Plaintiff the benefit of the later date and assuming that he was

shot on July 5, 2020, pursuant to ORS 30.275(2)(b), he was required to serve the City with his tort

claim notice by January 1, 2021 (or the following business day on January 4, 2021), unless the

deadline for him to do so was tolled.  Plaintiff alleges that, "[p]ursuant to a statutory tolling law

passed by the Oregon legislature during the pandemic, Plaintiff submitted a timely tort claim notice

against the City on March 31, 2022" (ECF No. 20, ¶ 77).  The statutory tolling law that Plaintiff

refers to is Section 7 of House Bill "HB" 4212, which provides in pertinent part as follows:

> (1) If the expiration of the time to commence an action or give notice of a
> claim falls within the time in which any declaration of a state of emergency
> issued by the Governor related to COVID-19, and any extension of the
> declaration, is in effect, or within 90 days after the declaration and any
> extension is no longer in effect, <u>the expiration of the time to commence the</u>

Page 13 –   CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

<u>action or give notice of the claim is extended to a date 90 days after the declaration and any extension is no longer in effect</u>.

(2) Subsection (1) of this section applies to:
. . .

(c) The time period for commencing an action or giving a notice of claim under ORS 30.275[.]

(Tu Dec. ¶ 3, Ex. 1, pg. 6) (emphasis added).  Since the deadline for Plaintiff to give the City notice of his tort claim expired while the Governor's state of emergency declaration was still in effect, pursuant to the above quoted provisions of Section 7 of HB 4212, the time period for Plaintiff to provide the City with his tort claim notice pursuant to ORS 30.275 was "extended to a date 90 days after" the Governor's state of emergency declaration "is no longer in effect."

However, Section 8 of HB 4212 specifically provides that, "Sections 6 and 7 of this 2020 special session Act are <u>repealed on December 31, 2021</u>" (Tu Dec. ¶ 3, Ex. 1, pg. 6).  Pursuant to Section 8, the tolling provision contained in Section 7 quoted above was repealed effective as of December 31, 2021.  That December 31, 2021 repeal date for Section 7 of HB 4212 was reaffirmed one year later by Section 3 of Senate Bill "SB" 296, which states in pertinent part that, "Section 7, chapter 12, Oregon Laws 2020 (first special session), is <u>repealed on December 31, 2021</u>" (Tu Dec. ¶ 4, Ex. 2, pg. 4).  As such, pursuant to both Section 7 of HB 4212 and Section 3 of SB 296, the tolling of the deadline for Plaintiff to provide the City with his tort claim notice was repealed effective as of December 31, 2021.  That means that to be timely, Plaintiff was required to serve the City with this tort claim notice by December 31, 2021.  However, since Plaintiff alleges that he did not provide the City with his tort claim notice until March 31, 2022 (ECF No. 20, ¶ 77), his battery claim against the City is untimely and barred by the OTCA.  As a result, the Court does not have subject matter jurisdiction over Plaintiff's battery claim.

/// /// ///

/// /// ///

/// /// ///

/// /// ///

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, ROOM 430
PORTLAND, OREGON 97204
TEL: (503) 823-4047; FAX: (503) 823-3089

## V.   CONCLUSION

For the reasons stated above, the Court should grant this Motion and dismiss Plaintiff's entire SAC with prejudice.  The Court should not grant Plaintiff with leave to amend for a third time, since any attempt by him to amend would be futile.

DATED:  September 27, 2022          PORTLAND CITY ATTORNEY'S OFFICE


By: */s/ Trung D. Tu*
      Trung D. Tu, OSB No. 004100
      Deputy City Attorney
      Email: trung.tu@portlandoregon.gov
      Telephone: (503) 823-3057
Of Attorneys for Defendant City of Portland,
Anthony Whitmore, Garret Hemmerlein, Tyler
Brunelle and Craig Dobson

PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4TH AVENUE, ROOM 430
PORTLAND, OREGON 97204
TEL: (503) 823-4047; FAX: (503) 823-3089

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2022, I served or caused to be served a true and correct copy of the foregoing DEFENDANTS CITY OF PORTLAND, ANTHONY WHITMORE, GARRET HEMMERLEIN, TYLER BRUNELLE AND CRAIG DOBSON'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT on the interested parties in this action as follows:

Mr. Juan C. Chavez                              *Of Attorneys for Plaintiff Dexter Pearce*
Mr. Franz H. Bruggemeier
Mr. Alexander Meggitt
OREGON JUSTICE RESOURCE CENTER
P.O. Box 5248
Portland, Oregon 97208
Telephone: (503) 944-2270
Facsimile: (971) 275-1839
Email: jchavez@ojrc.info,
fbruggemeier@ojrc.info and
alex.meggitt@gmail.com

☐     by **mail** in a sealed envelope, with postage fully prepaid, and deposited with the U.S. Postal Service in Portland, Oregon.

☐     by **hand delivery.**

☐     by **facsimile transmission.**

☐     by **email.** Based on an agreement of the parties to accept service by e-mail or electronic transmission.

☒     by **electronic service** via the Court's CM/ECF electronic filing system for registered users.

DATED:  September 27, 2022                    _____
                                                            */s/ Trung D. Tu*
                                                            Trung D. Tu, OSB No. 004100
                                                            Deputy City Attorney
                                                            Telephone: (503) 823-4047
                                                            Of Attorneys for Defendant City of Portland,
                                                            Anthony Whitmore, Garret Hemmerlein, Tyler
                                                            Brunelle and Craig Dobson

Page  16 –   CITY DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT