IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DEXTER PEARCE,                                   No. 3:22-cv-00518-HZ

              Plaintiff,            OPINION & ORDER

      v.

CITY OF PORTLAND; ANTHONY
WHITMORE; GARRET HEMMERLEIN;
TYLER BRUNELLE; MICHAEL RAINS;
and CRAIG DOBSON,

              Defendants.

Juan C. Chavez
Franz Bruggemeier
Alex Meggitt
Oregon Justice Resource Center
PO Box 5248
Portland, OR 97208

      Attorneys for Plaintiff

1 – OPINION & ORDER

Trung D. Tu
Deputy City Attorney
Portland City Attorney's Office
1221 SW Fourth Avenue, Suite 430
Portland, Oregon 97204

    Attorney for Defendants[1]

HERNÁNDEZ, District Judge:

    Plaintiff Dexter Pearce brings claims under 42 U.S.C. § 1983 against the City of Portland

("City") and Portland Police Bureau ("PPB") Officers Anthony Whitmore, Garret Hemmerlein,

Tyler Brunelle, and Craig Dobson, alleging that Defendants violated Plaintiff's First and Fourth

Amendment rights. Plaintiff also brings a state-law battery claim against the City. Defendants

move to dismiss all claims under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1) for

failure to state a claim and for lack of subject matter jurisdiction. The Court denies Defendants'

motion as to the First and Fourth Amendment claims but grants Defendants' motion to dismiss

Plaintiff's state-law claim.

## BACKGROUND

    On the evening of July 4, 2020, Plaintiff participated in a protest against police violence

in downtown Portland as he had on several other days during that summer. Second Am. Compl.

("SAC") ¶ 44, ECF 20. In an attempt to move protestors out of downtown, PPB officers

"chased" groups of protestors for several blocks. SAC ¶ 45. Sometime between 11:45 p.m. and

12:10 a.m., while Plaintiff was walking away, a PPB officer shot him in the back of his calf with

an impact munition. SAC ¶ 46. Because Plaintiff was walking away from the officers, he did not

---

[1] Other than Defendant Rains, individual Defendants and the City of Portland have waived
service of summons. At the time of this Opinion & Order, Defendant Rains has not been served
and has not waived service. Thus, at this time Defendant Rains is not a proper party to this case.

see who shot him. SAC ¶ 47. Plaintiff's friend identified the munition on the ground next to him as a 40 mm impact munition. SAC ¶ 47. At the time Plaintiff was shot, the individual Defendants were all present and firing 40 mm launchers at the crowd of protestors. SAC ¶ 47.

Plaintiff alleges that Defendants shot him in retaliation for protesting the police. SAC ¶ 48. Defendants did not attempt to detain or arrest Plaintiff when they shot him. SAC ¶ 47. The shot injured Plaintiff's leg, which swelled and bruised, and he was "barely able to walk" for the next few days. SAC ¶ 52. Plaintiff did not attend protests for nearly two weeks because of the pain and trauma he experienced. SAC ¶ 52. Plaintiff claims that PPB has a policy or practice of using force, including impact munitions and tear gas, against protestors without individualized justification. SAC ¶ 23.

Plaintiff served the City with a tort claim notice on March 31, 2022. SAC ¶ 77. On April 5, 2022, he brought this action against the City and John Does 1-10, alleging violations of his First and Fourth Amendment rights and common-law battery. Compl., ECF 1. Plaintiff filed two amended complaints, eventually naming the individual Defendants in lieu of the John Does. First Am. Compl., ECF 11; SAC. Defendants move to dismiss Plaintiff's Second Amended Complaint for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction.

## STANDARDS

### I.     Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party.

*Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). A motion to dismiss under

Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief"

with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations

must be enough to raise a right to relief above the speculative level on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (citations and footnote

omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (internal quotation and citation omitted). A plaintiff must "plead[] factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* In other words, a complaint must state a plausible claim for relief and

contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of

misconduct[.]" *Id. at 679*.

## II.   Rule 12(b)(1)

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(1)

addresses the court's subject matter jurisdiction. The party asserting jurisdiction bears the burden

of proving that the court has subject matter jurisdiction over their claims. *Kokkonen v. Guardian*

*Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A motion to dismiss on jurisdictional grounds can

be "either facial or factual." *White v. Lee,* 227 F.3d 1214, 1242 (9th Cir. 2000). "In a facial

attack, the challenger asserts that the allegations contained in a complaint are insufficient on their

face to invoke federal jurisdiction." *Safe Air v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004). In a

factual challenge, "a court may look beyond the complaint to matters of public record without

having to convert the motion into one for summary judgment. . . . It also need not presume the

truthfulness of the plaintiffs' allegations." *White,* 227 F.3d at 1242. Under Rule 12(h)(3) of the

Federal Rules of Civil Procedure, "[i]f the court determines at any time that it lacks subject

matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

**DISCUSSION**

Plaintiff brings claims under 42 U.S.C. § 1983, alleging that the individual Defendants

violated his Fourth Amendment right to be free from unreasonable seizures and violated his First

Amendment right by using force to retaliate against his protected speech. Plaintiff alleges

municipal liability against the City on his First and Fourth Amendment claims. Plaintiff also

brings a state-law battery claim against the City.

Defendants move to dismiss all claims, asserting that (1) Plaintiff's pleaded facts are

insufficient to state a claim; (2) Plaintiff was not seized under the Fourth Amendment; and (3)

Plaintiff's state-law claim is time-barred. The Court denies Defendants' motion as to Plaintiff's

First and Fourth Amendment claims and grants Defendants' motion as to the state-law tort claim.

**I.      Pleading Sufficiency**

Defendants contend that Plaintiff's claims should all be dismissed because they are

speculative and implausible and, thus do not state a claim for which relief may be granted.

Defendants argue that Plaintiff has "affirmatively pleaded himself out of court" by admitting that

he did not see who shot him, so he cannot have an "objectively reasonable basis" to allege that

he was shot by a police officer. Def. Mot. Dismiss 8, ECF 34. Defendants also assert that

Plaintiff's "accusation that all four of the Officer Defendants fired the single shot that hit him is

pure speculation and not plausible." *Id.*

When the individual identity of a defendant is not known before filing a complaint, a plaintiff should be given the opportunity to identify the defendant through discovery "unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Fitzhenry v. Portland Police Bureau*, No. 3:22-cv-00222-HZ, 2022 WL 3903555, at *4 (D. Or. Aug. 25, 2022) (citing *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999)); *see Gillespie v. Civiletti*, 629 F.2d 637, 643 (9th Cir. 1980) (finding that the district court erred when it dismissed plaintiff's complaint because he did not identify the Doe defendant). A complaint should not be dismissed before discovery where the plaintiff has no way of identifying the exact named Defendant who caused the constitutional violation. *Wright v. City of Santa Cruz*, No. 13-CV-01230-LHK, 2014 WL 217089, at *3 (N.D. Cal. Jan. 17, 2014); *see Gibson v. United States*, 781 F.2d 1334, 1340 (9th Cir. 1986) ("[A] plaintiff is not expected to plead [] evidence or specific factual details not ascertainable in advance of discovery.").

Plaintiff has sufficiently alleged injury and has named the officers most likely responsible for his injury. Plaintiff alleges that all four named officers were present and firing impact munitions at the crowd and that he was injured when he was shot by at least one of the officers. At this stage of the proceedings, Plaintiff need not name the specific officer that injured him without the benefit of discovery. The Court finds it is at least plausible that Plaintiff was shot by one of the named Defendants. At the pleading stage, before fact discovery, Plaintiff need not name individual Defendants at all—the action would not be dismissed if he had only named Doe Defendants. Thus, the Court declines to dismiss Plaintiff's claims simply because he cannot identify which specific officer shot him.

In their motion to dismiss, Defendants do not challenge the merits of Plaintiff's First Amendment claims. Because Defendants' only argument against Plaintiff's First Amendment

claims is that Plaintiff has not named the specific Defendant who shot him, the Court denies

Defendants' motion to dismiss those claims.

## II.      Fourth Amendment Claims

The Fourth Amendment prohibits unreasonable searches and seizures. *Torres v. Madrid,*

*141 S. Ct. 989, 995 (2021).* Excessive force claims are analyzed under the objective

reasonableness standard of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395

(1989). This standard requires inquiring into the factual circumstances of each case. *Id.* at 396–

97. "The Ninth Circuit has held that it is unreasonable to use pepper spray, projectile bean bags,

and pepper ball projectiles against individuals 'who were suspected of only minor criminal

activity, offered only passive resistance, and posed little to no threat of harm to others.'" *Black*

*Lives Matter Seattle-King Cnty. v. City of Seattle,* 466 F. Supp. 3d 1206, 1214 (W.D. Wash.

2020) (quoting *Nelson v. City of Davis*, 685 F.3d 867, 885 (9th Cir. 2012)).

Plaintiff alleges that the individual Defendants violated his Fourth Amendment right to be

free from unreasonable seizures when one of them shot him with a 40 mm impact munition.

Plaintiff also alleges that the City is liable because the conduct stems from a pattern and practice

of failing to train, supervise, and discipline officers, resulting in Fourth Amendment violations

by PPB officers.[2] Defendants argue that Plaintiff failed to state a Fourth Amendment claim

because shooting Plaintiff in the back of the leg did not constitute a seizure. Defendants do not

argue that their actions were reasonable but only that they did not "seize" Plaintiff. Defendants

assert that Plaintiff was never seized because (1) the officers did not intend to restrain Plaintiff

and (2) the officers did not actually terminate or restrain Plaintiff's freedom of movement.

---

[2] In their motion to dismiss, Defendants do not specifically attack the sufficiency of Plaintiff's
municipal liability claim against the City.

7 – OPINION & ORDER

In determining whether Defendants violated the Fourth Amendment, the threshold question is whether the plaintiff was seized. *Torres,* 141 S. Ct. at 1003. A seizure can occur through physical force or by a "show of authority" that in some way restrains a person's liberty. *Terry v. Ohio*, 392 U.S. 1, 19 (1968). Seizures by force are distinct from seizures by control. *Torres*, 141 S. Ct. at 1001. In *Torres*, the Court explained that a seizure by control requires either "voluntary submission to a show of authority or the termination of freedom of movement." *Id.* But the requirement for control or submission has "never extended to seizures by force." *Id.*

A seizure by force only lasts as long as the force is applied, but "[b]rief seizures are seizures all the same." *Id.* at 999. "[A] seizure is "a single act, and not a continuous fact," and an individual may be seized for a brief time despite later demonstrating freedom of movement." *Id.* at 1002 (quoting *California v. Hodari D.*, 499 U.S. 621, 625 (1991)). In *Torres*, the Supreme Court addressed whether a seizure occurs when a police officer shoots someone but does not immediately detain or arrest them. *Id.* The Court held that "[t]he application of physical force to the body of a person with intent to restrain is a seizure, even if the force does not succeed in subduing the person." *Id.* at 994. Thus, whether a seizure by force occurred depends on whether the officers' conduct "objectively manifest[ed] an intent to restrain." *Id.* at 998. The degree of force used is relevant, and an accidental force, or a force intentionally applied for another reason, does not satisfy the objective intent requirement. *Id.* Further, whether a seizure occurred does not depend on the subjective perception of the seized person. *Id.* at 999.

Intentional application of force that impairs a person's freedom of movement can be sufficient to meet the objective intent requirement, regardless of whether the officers intended to detain the person. See *Alsaada v. City of Columbus*, 536 F. Supp. 3d 216, 264 (S.D. Ohio

2021), *modified sub nom. Alsaada v. City of Columbus*, No. 2:20-CV-3431, 2021 WL 3375834 (S.D. Ohio June 25, 2021). In *Alsaada*, a post-*Torres* opinion, the court explained that the use of less-lethal crowd control tactics can constitute a seizure when the "governmental action is intentional" and restrains freedom of movement. *Id*. at 262–63. *See Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2006) (holding that the plaintiff was seized because they were a deliberate target of the officer's use of force, even though they were not arrested or detained).

Intent to restrain can include intent to *control* a person's movement. *Marbet v. City of Portland*, No. CV 02-1448-HA, 2003 WL 23540258, at *10 (D. Or. Sept. 8, 2003). In *Marbet*, Portland police officers used pepper spray and rubber bullets against a large group of protestors. *Id.* The officers used these devices to move the crowd back 120 feet from the building in front of which they were gathering. *Id.* The court held that the plaintiffs had sufficiently alleged facts showing that the officers "intentionally restrained plaintiffs' freedom of movement." *Id.* Because some plaintiffs were physically moved and others had their area of movement "circumscribed," the court found that the defendants' use of force constituted a seizure. *Id.* "Clearly the effect of defendants' actions was to *control* plaintiffs' movement." *Id.* (emphasis added).

The Supreme Court's holding in *Torres* did not alter the reasoning behind the district court's holding in *Marbet*. Both cases explain that a "seizure" requires an intent to restrain movement. Read together, the two opinions demonstrate that intent to restrain may include intent to control movement, even if the officers do not intend to detain the person. *Marbet* may be more instructive because it involved police use of force at protests, whereas *Torres* involved police officers shooting into a vehicle while executing an arrest warrant. And unlike *Torres*, the facts of *Marbet* are analogous to this case because the officers in *Marbet* were not attempting to arrest or detain the plaintiffs.

Plaintiff alleges that the Defendant officers, along with shooting impact munitions at them, "chased" the protestors, himself included, for several blocks. As in *Marbet*, the officers' use of force physically moved Plaintiff, and although he was not arrested or detained, his freedom of movement was restrained, even if such restraint was temporary. Defendants argue that the intent was to disperse rather than to restrain, but one does not exclude the other. *See Johnson v. City of San Jose*, No. 21-CV-01849-BLF, 2022 WL 799424, at *5 (N.D. Cal. Mar. 16, 2022) (officer's stated intent to disperse did not preclude the inference that the intent could have been to restrain movement); *Nelson*, 685 F.3d at 877–78 (officers' possible intent to disperse did not impact whether a seizure occurred when their "application of force was a knowing and willful act that terminated . . . freedom of movement"). As alleged, the intent of Defendants' use of force was to control the protestors' movement, including Plaintiff's, and they intentionally used that force when they shot Plaintiff in the back of the calf with a 40 mm munition. Accepting Plaintiff's alleged facts as true, Defendants actions plausibly show an objective intent to restrain or at least control Plaintiff's movement, resulting in a seizure.

Defendants also argue that because Plaintiff's freedom was not actually restrained, there was no seizure. But Defendants' argument fails under *Torres*. In that case, the Supreme Court unambiguously held a seizure does not require that movement actually be restrained when force is applied. *Torres*, 141 S. Ct. at 994 ("The application of physical force to the body of a person with intent to restrain is a seizure, even if the force does not succeed in subduing the person."). "[W]hat is required is that a person's *freedom of movement* had been terminated, not that the person's movement itself had been terminated." *Alsaada*, 536 F. Supp. 3d at 264 (emphasis added). The alleged facts show that Defendants applied force to Plaintiff when they shot him with an impact munition. That Plaintiff was not detained by the officers and was able to walk or

hobble away does not preclude a seizure. See *Marbet* at *10 (quoting *Hodari D.*, 499 U.S. at 626) ("The word 'seizure' readily bears the meaning of . . . application of physical force to restrain movement, even when it is ultimately unsuccessful."). In other words, whether his movement was actually restrained by the officers' use of force is immaterial.

Accordingly, Plaintiff has sufficiently alleged that he was seized by Defendants. Whether the seizure was reasonable under the circumstances is not argued by Defendants and cannot be resolved by the Court on the alleged facts. Thus, the Court denies Defendants' motion to dismiss Plaintiff's Fourth Amendment claims.

## III.    State Tort Battery Claim

Plaintiff's fifth claim against Defendants is a state-law battery claim. Defendants move to dismiss Plaintiff's state-law claim for lack of subject matter jurisdiction because Plaintiff failed to timely serve the City with a required tort claim notice. Plaintiff argues that the notice was timely because Oregon House Bill (H.B.) 4212 tolled the deadline to March 31, 2022, the day Plaintiff served the notice. The Court disagrees and finds that Plaintiff's state-law claim is time-barred.

### A.    Oregon Torts Claim Act

Commencement of Plaintiff's state-law battery claim is subject to the Oregon Torts Claim Act ("OTCA"). Giving notice under the OTCA is a jurisdictional requirement. *Fry v. Willamalane Park & Rec. Dist.*, 4 Or. App. 575, 582, 481 P.2d 648, 651 (1971); *see Johnson v. Smith*, 24 Or. App. 621, 626, 546 P.2d 1087, 1090 (1976) ("[T]he pleading of notice in a proper fashion is a jurisdiction prerequisite to bringing a claim against the state."). Oregon Revised Statute § ("O.R.S.") 30.275 provides that:

(1) No action arising from any act or omission of a public body or an officer, employee or agent of a public body within the scope of ORS 30.260 to 30.300 shall be maintained unless notice of claim is given as required by this section.

(2) Notice of claim shall be given within the following applicable period of time, not including the period, not exceeding 90 days, during which the person injured is unable to give the notice because of the injury or because of minority, incompetency or other incapacity:

> (a) For wrongful death, within one year after the alleged loss or injury.
> (b) For all other claims, *within 180 days* after the alleged loss or injury.

O.R.S. 30.275 (emphasis added).

Under the OTCA, Plaintiff needed to serve the City with a tort claim notice within 180 days of his alleged injury. O.R.S. 30.275(2)(b). Plaintiff alleges he was shot by Defendants on either July 4, 2020 or July 5, 2020. So he needed to serve notice no later than January 1, 2021, unless the deadline was tolled. Plaintiff did not serve notice on Defendants until March 31, 2022. Thus, unless the deadline to provide notice was tolled, Plaintiff's state-law claim is time-barred.

**B.      HB 4212**

H.B. 4212 was passed in June 2020 in response to the COVID-19 pandemic. H.B. 4212, 80th Leg., 1st Spec. Sess. (Or. 2020). Among other provisions, Section 7 of H.B. 4212 extended time limitations for commencing civil actions and giving notice of claims, if the expiration of the time to commence an action or give notice fell within a governor-declared state of emergency due to COVID-19, "to a date 90 days after the [state of emergency] declaration and any extension is no longer in effect." *Id.* § 7. Specifically, Section 7(1) applies to: "(a) Time periods for commencing an action established in ORS chapter 12; (b) The time period for commencing an action for wrongful death established in ORS 30.020; (c) The time period for commencing an action *or giving a notice of claim under ORS 30.275*; and (d) Any other time limitation for the commencement of a civil cause of action or the giving of notice of a civil claim established by

12 – OPINION & ORDER

statute." *Id.* § 7(2) (emphasis added). Section 8(1) of H.B. 4212 is a sunset provision that

triggered an automatic repeal of Section 7 on December 31, 2021. *Id*. § 8(1).

Oregon State Senate Bill (S.B.) 813 was passed in 2021 and amended Section 7 of H.B.

4212 to clarify that the state of emergency began on March 8, 2020, so claims that expired on or

after that date were eligible for the time extension. S.B. 813 § 1(4), 81st Leg., Reg. Sess. (Or.

2021). The state of emergency was extended several times and ultimately rescinded on April 1,

2022 by Executive Order 22-03.

Plaintiff's claim falls within the parameters of Section 7, specifically § 7(1)(c), because

the time to serve notice under O.R.S. 30.275 expired on January 1, 2021, during the ongoing

state of emergency. However, S.B. 813 did not amend Section 8, the automatic repeal provision,

and the parties dispute whether Plaintiff's notice on March 31, 2022 is beyond the extension

granted by H.B. 4212. Plaintiff argues that H.B. 4212 extended deadlines to file notice or

commence claims until March 31, 2022—ninety days after Section 7 was automatically repealed.

Defendants argue that Plaintiff needed to serve the City with his tort claim notice by December

31, 2021, and because he served the notice after Section 7 was repealed, any extension no longer

applied. The Court agrees with Defendants.

The question here is whether the extension provided by Section 7 of H.B. 4212 and the

repeal date in Section 8 establish a final deadline of December 31, 2021 to give notice of claims,

or if plaintiffs have ninety days *after* December 31, 2021 to serve notice. The Court recently

addressed this issue in the context of a statute of repose in *Milligan v. C.R. Bard, Inc.*, No. 3:22-

CV-00448-HZ, 2022 WL 16552307 (D. Or. Oct. 26, 2022). Based on statutory interpretation, the

Court held that the extensions granted in Section 7 of H.B. 4212 were repealed by Section 8 on

13 – OPINION & ORDER

December 31, 2021. *Id.* at *4. Section 8(1) states: "Sections 6 and 7 of this 2020 special session

Act are repealed on December 31, 2021." *Id.* This Court further explained:

> There is no language tying the repeal date to the end of the state of emergency.
> There is also no language tying the ninety-day extension to the repeal of Section 7.
> Based on plain language, Section 7 of H.B. 4212 was repealed on December 31,
> 2021, and no extensions of times to commence civil actions are available beyond
> that date.

*Id.*

A majority of state circuit courts that have examined this issue have interpreted the repeal

provision in Section 8 similarly and have found that December 31, 2021 was the ultimate

deadline to file claims that received extensions under Section 7. *See Flanders v. WinCo Foods*

*LLC*, No. 22CV11032 (Or. Cir. Sept. 9, 2022) (based on plain language, extensions from Section

7 of H.B. 4212 ended on December 31, 2021); *Progressive Universal Ins. Co. v. Tosano*, No.

22CV09996, 2022 WL 3576110 (Or. Cir. July 22, 2022) (holding that because Section 7 of H.B.

4212 was repealed on December 31, 2021, a claim filed after that date and outside the limitations

period was untimely); *Mouton v. Tri-Cnty. Metro. Transp. Dist. of Oregon,* No. 22CV06834 (Or.

Cir. June 8, 2022) (holding that the ninety-day extension did not apply after the December repeal

date despite continuation of the state of emergency; so a claim filed after Dec. 31, 2021 was

untimely); *but see Corbin v. Clevenger DDS et al.,* No. 22CV05152 (Or. Cir. June 10, 2022)

(holding that a ninety-day extension applied past the December repeal date, and the plaintiff had

until March 31, 2022 to file a claim). While these cases and this Court's opinion in *Milligan*

address statutes of limitation and repose, the reasoning is the same when applied to notice

requirements. The Court holds that Section 8 repealed Section 7 of H.B. 4212 on December 31,

2021, and any notice given after that date must be within the 180-day time period specified by

the OTCA.

Plaintiff served the City with his tort claim notice on March 31, 2022, around one year and three months after the 180-day deadline. Because H.B. 4212 did not toll the deadline beyond December 31, 2021, Plaintiff's state-law battery claim is time-barred. The Court grants Defendants' motion to dismiss Plaintiff's battery claim.

## CONCLUSION

The Court GRANTS in part and DENIES in part Defendants' Motion to Dismiss [34]. The Court denies Defendants' motion as to Plaintiff's claims under 42 U.S.C. § 1983 for violations of his First and Fourth Amendment rights. Plaintiff's state-law battery claim is dismissed with prejudice.

IT IS SO ORDERED.


DATED:___ January 18, 2023 ___.


_____
MARCO A. HERNÁNDEZ
United States District Judge

15 – OPINION & ORDER