IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DEXTER PEARCE, | No. 3:22-cv-00518-HZ |
| Plaintiff, | OPINION & ORDER |
| v. | |
| CITY OF PORTLAND; ANTHONY WHITMORE; GARRET HEMMERLEIN; TYLER BRUNELLE; MICHAEL RAINS; and CRAIG DOBSON, | |
| Defendants. | |

HERNÁNDEZ, District Judge:

Before the Court is Defendants' motion to bifurcate under Federal Rule of Civil Procedure 42(b). Defendants move to separate discovery and litigation of Plaintiff's claims against the individual Defendants Anthony Whitmore, Garret Hemmerlein, Tyler Brunelle, and Michael Rains[1] from Plaintiff's supervisory liability claim and *Monell* claims against Defendant

---

[1] At the time of this Opinion & Order, Defendant Rains has not been served and has not waived service. Thus, at this time, Defendant Rains is not a proper party to this case.

1 – OPINION & ORDER

Craig Dobson and the City of Portland ("City"). For the reasons state below, the Court denies Defendants' motion.

## BACKGROUND

Plaintiff's claims stem from events that occurred on the night of July 4, 2020. Second Am. Compl. ("SAC") ¶ 44, ECF 20. On that evening, Plaintiff participated in a protest against police violence in downtown Portland, Oregon. SAC ¶ 44. Plaintiff claims that sometime between 11:45 PM on July 4 and 12:10 AM on July 5, as he was walking away, a Portland Police Bureau ("PPB") officer shot him in the calf with a 40mm impact munition. SAC ¶ 46. Plaintiff did not see who shot him, but PPB Officers Whitmore, Hemmerlein, Brunelle, and Rains were all present and firing 40 mm launchers at the crowd of protestors. SAC ¶ 47. According to Plaintiff, the decision to fire "less lethal" weapons at the protestors came from Defendant Dobson, who was the incident commander that evening. SAC ¶ 50.

Plaintiff asserts four claims under 42 U.S.C.§ 1983 and one state-law battery claim against Defendants. Plaintiff brings Claims One and Three against all individual Defendants, alleging unlawful seizure in violation of the Fourth Amendment and unlawful retaliation against protected speech in violation of the First Amendment. Claims Two and Four allege municipal liability against the City for unlawful pattern and practice causing the constitutional violations. Claim Five is the state-law battery claim against the City based on the actions of the individual Defendants.

Defendants move under Rule 42(b) to bifurcate litigation of the claims against individual PPB Officers Whitmore, Hemmerlein, Brunelle, and Rains from the claims against Defendant Dobson and the City. Defendants seek separate discovery and trial in order to first litigate to conclusion the "threshold" claims for relief against the individual officers. Defendants propose to

litigate the claims for "supervisory liability" against Defendant Dobson and the *Monell* claims for municipal liability against the City in a subsequent proceeding. Plaintiff opposes bifurcation.

## STANDARDS

Federal Rule of Civil Procedure 42(b) provides: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Under Rule 42(b), a district court "has broad discretion to bifurcate a trial to permit deferral of costly and possibly unnecessary proceedings pending resolution of potentially dispositive preliminary issues." *Jinro Am. Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 998 (9th Cir. 2001); *see Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 961 (9th Cir. 2001) (citation omitted) ("The trial court's decision to bifurcate is reviewed for an abuse of discretion."). A court may bifurcate and try certain claims first to "avoid [] a difficult question by first dealing with an easier, dispositive issue." *Est. of Diaz v. City of Anaheim*, 840 F.3d 592, 601 (9th Cir. 2016) (quoting *Danjaq LLC*, 263 F.3d at 961). Because one purpose of bifurcation under Rule 42(b) is to avoid costs and unnecessary proceedings, "the court also has the power to limit discovery to the segregated issues." *Ellingson Timber Co. v. Great N. Ry. Co.*, 424 F.2d 497, 499 (9th Cir. 1970).

In the Ninth Circuit, "bifurcation is the exception rather than the rule of normal trial procedure." *Benson Tower Condo. Owners Ass'n v. Victaulic Co.*, 105 F. Supp. 3d 1184, 1208 (D. Or. 2015) (citation omitted). The moving party has the burden of proving that bifurcation is appropriate. *Id.*

**DISCUSSION**

I.   **Individual Claims Against Defendant Dobson**

Unlike his *Monell* claims against the City, Plaintiff's claims against Defendant Dobson are embedded in his claims against the other individual Defendants. Plaintiff names Defendant Dobson as one of the individual Defendants on his First Amendment and Fourth Amendment claims. Although Plaintiff does not allege that Defendant Dobson was one of the officers who may have shot him, he claims that Defendant Dobson directly participated in causing his injury by "failing to supervise and discipline" the other individual Defendants "and/or by directing [individual Defendants] to fire upon Plaintiff." SAC ¶ 58.

Section 1983 provides no mechanism to recover damages for supervisory liability. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989) ("*Respondeat Superior* or vicarious liability will not attach under § 1983."). Thus, liability must be premised on the defendant's individual actions that caused the plaintiff's injury. Plaintiff brings individual claims against Defendant Dobson and asserts that his injuries were directly caused by Defendant Dobson's actions. Plaintiff asserts that "the decision to fire on all protestors—including Plaintiff—came from Defendant [] Dobson[.]" SAC ¶ 50. In his First and Third Claims, Plaintiff names Defendant Dobson as one of the individual Defendant Officers responsible for his injury based on the single incident of Plaintiff being shot with non-lethal impact munition. As such, Plaintiff's claims against all individual Defendants are intertwined, and his claims against Defendant Dobson are not easily severable.

In a case with similar facts, the Ninth Circuit held that a district court abused its discretion by bifurcating litigation of claims against a police chief's liability from those claims against the individual officers that the police chief supervised. *De Anda v. City of Long Beach*,

7 F.3d 1418, 1421 (9th Cir. 1993). In *De Anda*, the district court had bifurcated trial on the plaintiff's civil rights claim against the individual officers from his *Monell* claim against the city. *Id.* The claims against the police chief were to be tried during the municipal liability phase rather than during the trial on liability for the individual officers. *Id.* According to the Ninth Circuit, "because [the plaintiff] alleged that all of the defendants were individually liable for the same constitutional injury, there was no reason to try the issue of [the police chief's liability] in a separate phase." *Id.* And because the municipal liability phase of that trial was rendered moot after the jury returned a verdict for the individual defendant officers, the plaintiff never had the opportunity to present evidence of the police chief's individual liability. *Id.* at 1420-21.

As was the case in *De Anda*, Plaintiff here alleges that along with the other individual Defendants, Defendant Dobson participated in and was directly responsible for the act that caused Plaintiff's constitutional injury. Thus, the Court finds no benefit to a separate proceeding on the claims against Defendant Dobson. Defendants' motion to bifurcate discovery and litigation on the claims against Defendant Dobson from the claims against the other individual Defendants is denied.

## II.     Municipal Liability

Defendants contend that litigation of the claims against the City should be bifurcated (1) for judicial economy and efficiency and (2) to prevent undue prejudice to the individual Officer Defendants. Each of Defendants' arguments in favor of bifurcation is discussed in turn.

### A.     Judicial Economy

Defendants first argue that the claims for municipal liability should be litigated separately because Plaintiff can only succeed on his *Monell* claim if he first prevails on his claims against the individual Defendants. Thus, according to Defendants, judicial resources will be preserved

by bifurcation because if the individual Defendants are found not liable, there will no need to proceed on the municipal liability claims against the City.

For a municipality to be liable under § 1983, a plaintiff must show that a municipal custom or policy caused the violation of their constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). But a municipality may not be held liable under § 1983 simply for having unconstitutional policies. *Quintanilla v. City of Downey*, 84 F.3d 353, 355 (9th Cir. 1996). For a city to be liable, a plaintiff must show that the actions of individuals acting under an unconstitutional municipal custom or policy caused a constitutional injury. *Id.* Thus, if Plaintiff suffered no constitutional violation at the hands of the individual Defendants, the City cannot be found liable under *Monell*. *Id.* For this reason, Defendants argue that in the interest of efficiency and judicial economy, Plaintiffs claims against the individual Defendants should be tried first. *See Banks v. Mortimer*, No. 18-CV-07391-HSG, 2021 WL 1599266, at *2 (N.D. Cal. Apr. 23, 2021) ("When Monell claims are asserted in conjunction with claims against individual defendants, courts often bifurcate them in the interests of convenience and judicial economy."); *Est. of Lopez v. Suhr*, No. 15-cv-01846-HSG, 2016 WL 1639547, at *6 (N.D. Cal. Apr. 26, 2016) (citation and brackets omitted) ("[B]ifurcation is conducive to expedition and economy because a finding that the individual officers did not deprive the plaintiff of his constitutional or statutory rights . . . is dispositive of plaintiffs' claims against the City[.]").

But Defendants' argument fails for two reasons. First, Defendants ignore the converse situation. If Plaintiff succeeds on his claims against the individual Defendants, significantly more time and judicial resources would be expended litigating the related municipal liability claims in a separate, subsequent proceeding. *See Ryan v. City of Salem*, No. 3:16-cv-0565-AC, 2017 WL 2426868, at *2 (D. Or. June 5, 2017) (noting that if a jury finds a constitutional violation in the

first phase of a bifurcated trial, "the second phase of the trial would likely result in a longer aggregate time for trial than would a single trial on both claims"). As here, where evidence of individual defendants actions and what a city's policies allow may overlap, "a judicial efficiency argument does not support bifurcation[.]" *Id.*

Second, Defendants erroneously assume that a judgment in favor of the individual Defendants necessarily equates to a finding that Plaintiff suffered no constitutional violation. The individual Defendants may be found to have caused a constitutional injury to Plaintiff but still be shielded from liability through qualified immunity. See *Chew v. Gates*, 27 F.3d 1432, 1439 (9th Cir. 1994) (explaining that when an individual defendant succeeds on a qualified immunity defense, "the city's liability has not been actually and necessarily decided"). Thus, even if Plaintiff does not prevail on his claims against the individual Defendants, he could potentially still proceed with his claim against the City. And because the issues of individual liability and municipal liability are intertwined and not easily separable in this case, bifurcation would not promote efficiency or preserve judicial economy.

### B.    Undue Prejudice

Defendants next argue that bifurcating litigation of Plaintiff's claims for individual liability from their *Monell* claims will avoid a risk of unfair prejudice to the individual Defendants. In their discretion and when appropriate, "courts may order separate trials where the evidence supporting the *Monell* claim is likely to cause undue prejudice to the individual defendants." *Ryan*, 2017 WL 2426868, at *2. But it is Defendants burden to show that the individual Defendants will be prejudiced if the Court maintains the status quo and adjudicates all of Plaintiff's claims together. See *Benson Tower Condo. Owners Ass'n*, 105 F. Supp. 3d at 1208. Defendants cannot make that showing at this stage of the proceedings.

Defendants argue that evidence that the City maintains an unconstitutional policy or practice would "have a high likelihood of influencing and tainting the jury's decision about whether [individual Defendants] had used excessive force against Plaintiff." Def. Mot. to Bifurcate 11, ECF 45. But at this stage, the Court cannot determine whether or not evidence relevant to the claims against the City would also be relevant to claims against the individual Defendants. For example, determining whether the individual Defendants acted pursuant to or outside of a City policy may be important to establish their liability on Plaintiff's claims.

Thus, bifurcation is not warranted at this time. As Plaintiff concedes, Defendants' argument in favor of bifurcation "would likely benefit from further discovery and argument at a later date." Pl. Resp. 5, ECF 46. The Court agrees. Defendants are not precluded from raising these issues and seeking bifurcation of the proceedings after discovery has been completed and dispositive motions have been resolved.

## CONCLUSION

Defendants' Motion to Bifurcate [45] is DENIED.

IT IS SO ORDERED.

DATED:___February 21, 2023____.

_____
MARCO A. HERNÁNDEZ
United States District Judge